UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:                                   )
                                         )   Case No. 09-bk-17575
   Multiut Corporation,                  )
      an Illinois corporation,           )   Chapter 7
                                         )
   Debtor.                               )   Judge Timothy A. Barnes
                                         )

DECISION ALLOWING IN PART AND DISALLOWING IN PART
ALAN J. MANDEL'S MOTION FOR FINAL COMPENSATION FOR ATTORNEYS' FEES
AND EXPENSES INCURRED IN CONNECTION WITH THE CHAPTER 11 ESTATE

TIMOTHY A. BARNES, Judge.

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in this district. This proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (B).

PROCEDURAL HISTORY

The matter before the court is Alan J. Mandel's Motion for Final Compensation for Attorneys' Fees and Expenses Incurred in Connection with the Chapter 11 Estate (the "Final Fee Motion").

In considering the Final Fee Motion, the court must consider the rather complicated issue of Mandel's retention and prior efforts to be compensated in the above-captioned case (the "Case"), as well as the nature and final disposition of the Case itself.

The Case was commenced on May 14, 2009 (the "Petition Date"). As stated in the disclosure statement filed in the Case, one of the factors necessitating the Case was the ongoing litigation between Multiut Corporation (the "Debtor") and Dynegy Marketing and Trade ("Dynegy"). Prior to Mandel's retention by this court, Mandel apparently served as the outside general counsel to the Debtor and assisted the Debtor in large part with the Debtor's issues with Dynegy.

Despite the central nature of the Dynegy litigation to the Case, the Debtor did not seek to retain the services of Mandel until January 22, 2010, more than six months after the Petition Date. Nonetheless, Mandel continued to provide services to the Debtor from the Petition Date through the date Judge Squires of this court ordered his retention, February 1, 2010. While the Debtor had sought to retain Mandel *nunc pro tunc* to the Petition Date, Judge Squires, rather than ruling on the request, took the *nunc pro tunc* nature of the retention under advisement. On April 5, 2010, in

1

granting Mandel's first application for compensation in the Case, Judge Schmetterer of this court reserved ruling on the issue of the *nunc pro tunc* retention in favor of Judge Squires, the judge permanently assigned to the Case. Upon Judge Squires' retirement, the Case was transferred to Judge Sonderby of this court with the *nunc pro tunc* issue still under advisement. Judge Sonderby also did not rule on the *nunc pro tunc* nature of the retention, and upon Judge Sonderby's retirement, the Case was again transferred with the *nunc pro tunc* issue unresolved. That issue is squarely before the court.

The reason, at least in part, that the issue was first called into question was an objection (the "Dynegy Objection") by Dynegy to the scope of Mandel's retention, the nature of his relationship to the Debtor, and *nunc pro tunc* nature of the retention. Without going into the details of that objection and the parties' actions in relation thereto, the court notes that the Dynegy Objection appears to have been resolved when the court amended Mandel's original order of retention to narrowly define the scope of his issues.

Dynegy's involvement in the Case did not end there, however. In 2010 and 2011, Dynegy's efforts were part of the reason Judge Sonderby denied confirmation of the Debtor's plan of reorganization and subsequently converted the Case from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code. Responding to Dynegy's involvement in the Case was clearly not contemplated in the scope of matters for which Mandel was originally retained, and those matters and the issue of Dynegy were clearly an important part of the involved though ultimately unsuccessful efforts of the Debtor to confirm a Chapter 11 plan of reorganization.

## DISCUSSION

The question of Mandel's allowable compensation is clearly within the authority of the court. 11 U.S.C. § 330. Further, the payment of any allowed compensation in the converted chapter 7 case is also governed by express provisions of the Bankruptcy Code. See 11 U.S.C. § 727(b) (upon the conversion of a case under Chapter 11 to a case under Chapter 7 of the Bankruptcy Code, administrative expenses of the former case are administrative expenses of the latter, subordinate only to the administrative expenses of the latter).

A.   *Nunc Pro Tunc* Retention

The court begins with the issue of the *nunc pro tunc* retention. The question, though disguised in its particular facts, is really one of whether an attorney may be compensated for work performed for a bankruptcy estate when that attorney has not been retained by the estate in the manner required by the Bankruptcy Code. An express reading of section 330 of the Bankruptcy Code and the opinions of the courts that have considered this broadly stated issue – including the Seventh Circuit – leads to the inescapable conclusion that such an unretained attorney may not be compensated for the work performed, regardless of whether the work was beneficial to the estate. See 11 U.S.C. § 330(a) ("the court may award to ... a professional person employed under section 327 ...."); see also In re Grabill Corp., 983 F.2d 773, 777 (7th Cir. 1993) (discounting counsel's "hopes of obtaining compensation under a provision that contains a condition precedent that it concedes it does not satisfy"); In re Met-L-Wood Corp., 103 B.R. 972 (Bankr. N.D. Ill. 1989), affd 115 B.R. 133 (N.D. Ill. 1990).

2

The narrower question of *nunc pro tunc* retention blurs this bright line rule somewhat, as the attorney is ultimately retained, and seeks to rectify the earlier omission in the later retention. Other judges in this court have previously addressed nunc pro tunc retention and concluded that it should be approved only in extraordinary cases. In re Rusty Jones, Inc., 134 B.R. 321, 341-47 (Bankr. N.D. Ill. 1991) ("*nunc pro tunc* retention of professionals is appropriate only where they can satisfy the disinterestedness requirement of § 327(a) and can prove extraordinary circumstances justifying their untimely retention."). The court, however, recognizes that there are factors which may lead a debtor to delay seeking the retention of an attorney and that such an attorney, in fulfilling his or her fiduciary obligations to the client, may as a result be compelled to continue to provide services to the client despite being unretained by the bankruptcy estate. See Grabill, 983 F.2d at 777. Those factors may or may not be extraordinary, and should be considered on a case-by-case basis.

Given that this matter should have been determined by the court over two years ago and that no party has appeared and been heard with respect to this issue in the context of the Final Fee Motion, and given the looser standard on *nunc pro tunc* retention described in *Grabill*, the court finds that cause exists to permit the *nunc pro tunc* retention. The court has reviewed the pre-retention fee statements submitted by Mandel in his first compensation application and finds that they appear to reflect services that were reasonable, necessary and beneficial to the bankruptcy estate. For that reason, the remaining amount of Mandel's request for compensation, $18,707.50, is approved.

B.   The Final Retention Period

The court's inquiry does not end there, however. In reviewing the Final Fee Motion, the court was surprised to find that, without order from the court, the Debtor and Mandel apparently expanded the scope of his services in the final retention period to include activities that are only compensable to counsel retained under 11 U.S.C. § 327(a).

By way of explanation, section 327(a) authorizes a bankruptcy estate to retain – with the court's approval -- counsel to represent or assist the estate in carrying out the estate's duties under the Bankruptcy Code. 11 U.S.C. § 327(a) ("to represent or assist the trustee in carrying out the trustee's duties under this title."); see also 11 U.S.C. § 1107(a) ("a debtor in possession shall have all the rights ... and shall perform all the functions and duties ... of a trustee ...."). Counsel engaged pursuant to this section must demonstrate that it does not hold or represent an interest adverse to the estate, and that it is a "disinterested person." 11 U.S.C. § 327(a). As discussed above, without being appropriately retained, fees and expenses incurred by counsel under this section are not compensable by the bankruptcy estate. See 11 U.S.C. § 330.

In contrast, section 327(e) authorizes a much more limited retention. 11 U.S.C. § 327(e). Section 327(e) authorizes the trustee – again, only with the court's approval – to "employ, for a specified special purpose, *other than assisting the trustee in conducting the case*, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." Id. (emphasis added). Thus counsel retained under section 327(e) are (i) retained for a specific purpose; (ii) may not assist the trustee/debtor in conducting the case; (iii) must only show it is without conflict on the matter retained, and not with respect to the estate; and (iv) need not demonstrate that it is a "disinterested person." See, e.g., DeVlieg-Bullard, Inc. v. Natale (In re DeVlieg, Inc.), 174 B.R. 497, 502 (N.D. Ill. 1994).

3

Mandel's retention as special counsel to the Debtor's estate was expressly requested and thereafter authorized under section 327(e) only. The scope of his retention was expressly limited to "the purpose of filing a response to the motion for summary judgment filed by Dynegy." Yet Mandel's Final Fee Motion contains requests to be compensated for work that is purely within the scope of section 327(a) retention.[1]

For example, Mandel includes in the Final Fee Motion a request for compensation for "Chapter 11 General Administration" services, self-described as "Mandel [the counsel in question] assisted the Debtor's primary counsel in various aspects of the day-to-day administration of the Chapter 11 Estate including review and assistance in the preparation of the Debtor's schedules and assisting in response to certain claims asserted against the Debtor."

There is no excuse for this broadening of the scope of Mandel's services, especially in light of the earlier disputes regarding that very scope. Both the Debtor and Mandel knew of the limited nature of Mandel's retention. The Debtor was ably represented by counsel retained under section 327(a) (which counsel filed the Final Fee Motion for Mandel). Had that counsel been unable to perform the services in question, it certainly knew in its role as section 327(a) counsel to the estate that it would need counsel retained under section 327(a) to assist it. Unlike the *nunc pro tunc* question, the scope of Mandel's services and the nature of his retention with respect to this new and expanded role was entirely within his control. He could and should have declined to perform the new work without first having complied with the requirements of the Bankruptcy Code.

There is, therefore, no reason that Mandel should have been performing case administration services without seeking to expand the scope of his retention. For that reason, Mandel's request for $1,722.50 in fees in connection with that work is denied.

A closer question arises in the compensation for "Confirmation Hearing" services requested by Mandel. Such work is self-described as "Mandel assisted the Debtor's primary counsel leading up to and during this Court's confirmation hearing on December 16, 2011 and continuing with representation concerning the Court's denial of the request to confirm the plan and various procedural matters concerning the conversion and Dynegy's motion to dismiss the Debtor's bankruptcy petition."

While there is no question that by assisting the Debtor in attempting to confirm its bankruptcy plan, counsel is assisting the Debtor in conducting the bankruptcy case, a role specifically proscribed for section 327(e) special counsel, the court can see that in this case the question of what was confirmation hearing work in the purest sense and what was spillover from the Dynegy litigation is a harder one to answer. In seeking to confirm the Debtor's plan, the Debtor's 327(a) counsel may have reasonably requested the input of Mandel on disclosure questions relating to the Dynegy litigation and might have needed to consult with Mandel on issues in common between Dynegy's claim in the subject litigation and the confirmation dispute.

---

[1] To put a finer point on this issue, to be clear, Mandel's services in general appear to be outside the *very* limited scope of his retention. Given no party has raised objections to this fact, the court is hard pressed to disallow all of Mr. Mandel's requests other than those which expressly relate to the summary judgment motion. It would, per the terms of his engagement however, be entirely justified in doing so.

While the court would be entirely justified in relying on Mandel's classification of "Confirmation Hearing" work as a self-disclosure of that work, which is not compensable under section 327(e) (as opposed to two separate classifications of requests relating purely to the Dynegy litigation contained in the Final Fee Motion), the court is willing to give Mandel the benefit of the doubt and award him seventy-five percent (75%) of the compensation sought for "Confirmation Hearing" work. Mandel has requested compensation of $11,308.75 for work in this category. He is therefore awarded $8,481.56 in compensation relating to "Confirmation Hearing" work, and the remainder of the request in the amount of $2,827.19 is denied.

There remains what might be described as the ordinary issues of compensation arising from the Final Fee Motion. These include, for example, time entries that are not in tenths of an hour, time entries that clearly combine multiple tasks into single time entries without breaking out the tasks, and copying expense at fifteen cents/page.

With respect to the first of these three issues, there are instances where the Final Fee Motion violates the Local Rules for the United States Bankruptcy Court for the Northern District of Illinois (the "Local Bankruptcy Rules" or as to a particular rule, "LBR ____") that time be submitted in tenths of an hour. LBR 5082-1(C)(4); see also In re Spanjer Brothers, Inc., 203 B.R. 85, 95 (Bankr. N.D.Ill. 1996); In re Wire Cloth Products, Inc., 130 B.R. 798, 809, 808 n.2 (Bankr. N.D.Ill. 1991). The penalty for such transgressions is, in the discretion of the court, a reduction in the fees and expenses allowed. LBR 5082-1(E). Given that the transgressions in question were fairly limited in nature, the court has chosen to address these by rounding down the offending time to the nearest increment that is appropriately in tenths of an hour. Looking solely at the time categories not previously subject to reduction so as not to double count, the court has found a total of .27 of increments at $125/hr. that will be disallowed ($33.75) and .05 of increments at $400/hr. that will be disallowed ($20.00), for a total of $53.75 in disallowances.

With respect to the second, there are a number of time entries in the Final Fee Motion that "lump" time, i.e. combine multiple tasks into single time entries without breaking out the tasks into separately accounted for increments of time. Lumping of time is expressly prohibited in the Guidelines for Reviewing Applications for Compensation (Fee Guidelines) adopted by the Executive Office of the United States Trustees., 28 C.F.R. Part 58, Appendix. This court routinely disallows lumped time. In re Stoecker, 114 B.R. 965, 972 (Bankr. N.D.Ill. 1990); In re Pettibone Corp., 74 B.R. 293, 302 (Bankr. N.D.Ill. 1987). There are also an inordinate number of meetings between lawyers without satisfactory explanation for the need thereof.

Nonetheless, given that the bulk of these time entries occur in categories previously reduced, the court will make no further reduction for lumped time.

Finally, without explanation as to reason for the variance, the Final Fee Motion asks for reimbursement of copying expense at fifteen cents/page in contravention of the local policy of reimbursing copying expense at only ten cents/page unless the party's costs are demonstrably higher (e.g., where copying is outsourced to a third party at a rate exceeding ten cents/page). See "Procedures for Cases Assigned to Judge Bruce W. Black," "Procedures for Cases Assigned to Judge Jack B. Schmetterer," and "Procedures for Cases Assigned to Judge Carol A. Doyle," contained at www.ilnb.uscourts.gov.

Though Mandel may have been allowed expense reimbursement in earlier applications at the higher rate, that allowance appears to have occurred by oversight rather than by design on the part of the court. The court will not revisit the expenses in the earlier fee applications; nor will it question the instances in which Mandel outsourced copying services, but will in this Final Fee Motion only allow copying expense at the accepted rate of ten cents/page. As a result, the expenses in the Final Fee Motion are reduced by $24.90 to account for the reduction from fifteen cents/page to ten cents/page.

## CONCLUSION

For the foregoing reasons, the fees requested for the period of February 1, 2010 to May 12, 2011 in the Final Fee Motion in the amount of $24,178.75 are reduced by a total of $4,603.44 ($1,722.50 plus $2,827.19 plus $53.75), and are hereby allowed in the amount of $19,575.31.

The expenses requested for the period of February 1, 2010 to May 12, 2011 in the Final Fee Motion in the amount of $656.19 are reduced by a total of $24.90, and are hereby allowed in the amount of $631.29.

Finally, Mandel's remaining fees for the preretention period in the amount of 18,707.50, previously reserved by the court, are approved.

Mandel is directed to submit to the court's deputy a separate authorization and payment order consistent with this decision no later than June 15, 2012.

Dated: June 5, 2012

_____
Hon. Timothy A. Barnes
United States Bankruptcy Judge

6